## PORTSMOUTH COTTON OIL REFINING CORPORATION v. FOURTH NAT. BANK OF MONTGOMERY.

(District Court, M. D. Alabama, N. D., at Montgomery.   May 17, 1922.)

1. **Banks and banking ⬳260(1)—National bank held liable for money acquired through fraud of subsidiary.**

   A bank, which organized a subsidiary corporation to handle property it owned, which corporation had no capital or property, except that supplied by the bank, *held* liable for damages sustained by a purchaser of property from the corporation, which paid the bank for the same, where the property was not as represented and warranted.

2. **Corporations ⬳487(1)—That contract through which corporation obtained money belonging to another was ultra vires no defense.**

   That a contract through which a corporation obtained money that in equity belonged to another was ultra vires is no defense to an action for its recovery.

3. **Money received ⬳15—Action governed by equitable principles.**

   The action for money had and received is in its nature equitable, and is governed by equitable rules and principles.

At Law.   Action by the Portsmouth Cotton Oil Refining Corporation against the Fourth National Bank of Montgomery.   On motion to direct verdict for plaintiff.   Granted.

Steiner, Crum & Weil, of Montgomery, Ala., for plaintiff.
Weil, Stakely & Vardaman, of Montgomery, Ala., for defendant.

CLAYTON, District Judge.   The plaintiff, the Portsmouth Cotton Oil Refining Corporation, sues the defendant, the Fourth National Bank of Montgomery; the complaint containing the common counts including the count for money had and received by the defendant to the use of the plaintiff, and also special counts whereby the plaintiff seeks to recover damages growing out of a transaction had between the plaintiff and the Montgomery Oil & Feed Company (hereafter named by its initials), in which the latter sold to the plaintiff a tank or quantity of oil represented and guaranteed to be of a certain grade or quality. The M. O. & F. Co. drew upon the plaintiff a draft therefor in the sum of $9,292.50 and attached the same to the bill of lading for the oil, and this draft was paid in due course and in advance of its receipt of the oil. The draft was payable to the Fourth National Bank of Montgomery, who indorsed and transmitted it for collection for its account. Plaintiff charges that the oil, when received, was inferior in grade and quality, that in consequence thereof it sustained the damages sued for, and the plaintiff insists further that the M. O. & F. Co. was merely a nominal party, and that the defendant, the Fourth National Bank, was

the real party in interest, and therefore liable for loss or damage suffered by plaintiff. The defendant by pleas denies the allegations of the complaint and also asserts that the transaction mentioned by the plaintiff as a part of its complaint is ultra vires its charter, and that it cannot, therefore, be made liable.

[1] The essential and undisputed facts are that the Planters' Cotton Oil Company, a corporation, was indebted to the defendant in a large sum, approximating $20,000, secured in part by a mortgage made to the Montgomery Bank & Trust Company, as trustee, which mortgage the defendant foreclosed or caused to be foreclosed, and itself became the purchaser of property sold, bidding therefor approximately $12,000. Shortly after it had thus acquired this property, a corporation was formed under the name of the Montgomery Oil & Feed Company, the stockholders being G. F. Mertins, B. L. Gaddis, and John R. Montgomery. Mertins was the attorney for and a director in said bank, Gaddis was its vice president and also a director, and Montgomery was a stockholder. Mertins was made president of the oil and feed company, and Gaddis secretary and treasurer. The capital stock of this corporation was $5,000, consisting of 50 shares, of $100 each, of which Mertins as trustee, subscribed for 48 shares, Gaddis 1, and Montgomery 1. This entire capital stock was paid for by the defendant bank. None of the subscribers had any personal interest in the corporation, and never paid any part of the subscriptions, nor did they become obligated to repay the sum to the defendant bank. The amount of these subscriptions, $5,000, was credited by the defendant upon its books to the M. O. & F. Co., which subsequently withdrew or had the right to withdraw the same. Simultaneously with this transaction the defendant conveyed all the property purchased at the said mortgage sale to the M. O. & F. Co. Subsequently this corporation executed a mortgage to T. J. Reynolds, the then president of the defendant bank, as trustee, securing or purporting to secure an issue of $75,000 of bonds. This, the evidence shows, was done pursuant to advice of one or more of the national bank examiners, and for the purpose of enabling the bank to carry the asset upon its books as a chose in action or personalty, rather than as real estate.

The M. O. & F. Co., on or about June 8, 1918, executed to the defendant bank its demand note in the sum of $7,000, which bears a credit on May 18, 1919, of $4,000, and on May 15, 1918, likewise its demand note in the sum of $30,000, which note bears a credit on May 8, 1919, of $10,000. On the organization of this corporation the management thereof was turned over by the representatives of the bank to one Stanton, who had general charge thereof during its operation. Stanton from time to time consulted with the president and also the vice president and the finance committee of the defendant bank with reference to the business affairs of the oil and feed company, and daily made report of its operations to the president or vice president of the defendant bank. In the conduct of its business the M. O. & F. Co., on or about the 1st of May, 1919, sold and shipped to the plaintiff a tank of oil under a written contract or agreement, whereby the M. O. & F. Co. guaranteed the grade and quality of the oil. A draft was drawn

by the M. O. & F. Co. on the plaintiff for the purchase price, payable to the Fourth National Bank of Montgomery, which, together with the bill of lading for the oil, was turned over to the defendant bank, and that bank in the usual course indorsed the draft and forwarded the same for collection for its account. This draft was in due course and before the arrival of the oil at its destination paid by the plaintiff. Thereafter, upon the arrival of the oil, it was examined by the plaintiff and found to be inferior in grade and quality; whereupon notice thereof was immediately given by wire to the shipper, and as a result of negotiations between them the matter relating to the grade and quality of the oil was submitted to arbitration, and an award made in favor of the plaintiff for the amount sued for. Undoubtedly, if the plaintiff is entitled to recover, it should be for the amount sued for, $5,474.46.

This corporation, the M. O. & F. Co., was for a time operated in the manner which I have stated, and subsequently its property was leased to another concern—a corporation organized by independent parties. The M. O. & F. Co. thereupon ceased business and became and is insolvent. The defendant, the Fourth National Bank, itself entered into the lease contract, and by the provisions thereof granted to the lessee an option to purchase the assets of the M. O. & F. Co. It does not appear that the M. O. & F. Co. really owned any assets other than those that formerly belonged to the Planters' Cotton Oil Co. and that were transferred to the M. O. & F. Co. by the defendant bank.

It is manifest, upon a consideration of the whole evidence, that the defendant bank resorted to the device or plan of organizing the corporation and directing its management, in the effort to recoup the loss which it had sustained on account of the original indebtedness to it of the Planters' Cotton Oil Co. The M. O. & F. Co., as I have stated, had no assets or property, except that conveyed to it by the defendant bank, and no credit, except that which was supplied in its formation and subsequently by the defendant bank from time to time as occasion required, and it must be admitted that from the very beginning and afterwards such company was in fact a mere subsidiary of the defendant bank. It is not denied that the plaintiff has suffered the loss and damage resulting from the wrong done it in the sale of the oil, which the M. O. & F. Co. nominally sold, but the proceeds of which went to the defendant bank. Primarily, of course, the M. O. & F. Co. may be liable to the plaintiff for this damage, but the plaintiff has its election to pursue either that company or the party who in reality is responsible for its obligations. Upon the receipt by the defendant bank of the proceeds of the draft drawn upon the plaintiff, the defendant bank credited the proceeds to certain past-due obligations of the M. O. & F. Co.; but in doing this it had full knowledge of all the facts and circumstances relating to the transaction, and in legal contemplation received the benefit thereof.

[2] In National Bank of Commerce v. Equitable Trust Co. (8 C. C. A.), 227 Fed. 526, 142 C. C. A. 158, which was a case of similar import to this, the court said:

280 F.—56

"One of the defenses set up in the answer was that the contract between Nicholson and Perry, as representing the bank, was an agreement and transaction into which the bank could not enter, that it was ultra vires the bank, and that the bank is not liable for any of its acts under that contract; and this is now relied upon. That this position cannot be maintained, where the proceeding is to recover moneys which have gotten into the hands of the bank but belong to the plaintiff, we need only to call attention to what is said in Louisiana v. Wood, 102 U. S. 294, 299, * * * and Citizens' National Bank v. Appleton, 216 U. S. 196."

And in the case of First National Bank of Aiken v. Mott Iron Works, 257 U. S. ——, 42 Sup. Ct. 286, 66 L. Ed. ——, the court said:

"In such circumstances, whether the contract is valid or not, the contractor is accountable to the contractee, up to the amount of its undertaking, for the proceeds coming to his hands from the contractee upon the inducement of the contract." Cases cited.

In this case, therefore, the plaintiff is entitled to recover the amount for which it has declared; and as the case has been fully tried upon the merits, the distinction between a recovery on the guaranty, as having been necessarily incident to the business of banking, and a recovery of the amount received on account of the guaranty becomes purely formal. To the same effect is the well-considered case by the Supreme Court of the United States in Citizens' Central National Bank v. Appleton, Receiver, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443.

[3] It is unnecessary, perhaps, to refer to the well-recognized principle of law that, whenever one party has received money which in equity and good conscience belongs to another, it cannot be retained against the demand of the true owner. The action for money had and received is in its nature equitable, and is guided by equitable rules and principles. Under the undisputed evidence here the defendant has, in my opinion, received money which in good conscience belongs to the plaintiff, and ought to be accounted for by the defendant.

It may be observed, however, that the conduct of the defendant bank in its efforts to recoup its losses by resorting to the organization of the M. O. & F. Co., in furnishing its entire capital and according to it a credit or checking account, calls for no sort of criticism; but the device and method employed cannot relieve the matter of its true legal aspect or character.

There are many cases decided by the Supreme Court of the United States and other federal and state courts to the effect that, while a corporation such as a national bank may not as an original or independent enterprise organize and conduct the affairs of a separate corporation, yet it may do so for the bona fide purpose of recouping losses; and when it becomes such owner and proprietor that enterprise will be regarded as a mere trade-name, and the real owner and operator cannot escape liability on the ground that the transaction was in excess of the charter power.

None of the defenses presented here are tenable, and under the application of plain legal principles the plaintiff, in my opinion, is entitled to recover. Accordingly, the request of the plaintiff for a directed verdict in its behalf is granted.