## ANDERSON v. KENTUCKY TITLE TRUST CO. OF LOUISVILLE, KY., et al.

District Court, W. D. Kentucky.

Nov. 23, 1933.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, for plaintiff.

Crawford, Middleton, Milner & Seelbach, of Louisville, Ky., for defendant Kentucky Title Trust Co.

C. R. Luker, of London, Ky., and Woodward, Hamilton & Hobson, of Louisville, Ky., for defendant A. M. Hiatt.

ANDREW M. J. COCHRAN, District Judge.

This suit is before me upon final hearing and for decree. It was brought to recover from the defendant Title Trust Company $8,436 held by it as stakeholder under an agreement dated March 27, 1931, between plaintiff and the defendant receiver of the Mt. Vernon Bank, the other claimant thereto. The controversy in regard to this fund came about in this way. On February 27, 1930, the Bank of Kentucky and the Mt. Vernon Bank were going concerns. The former held three notes of the latter, one for $10,000, another for $20,000, and a third for $20,000, amounting altogether to $50,000, secured by collateral. The articles of incorporation of the Mt. Vernon Bank provided: "That the highest amount of indebtedness which the corporation may, at any time, incur other than for money received upon deposits, shall not, at any time, exceed the sum of $50,000.00."

By reason of its indebtedness on these three notes, it had exhausted its power to incur other such indebtedness. On that date the Bank of Kentucky discounted the note of the Mt. Vernon Bank of $9,000, placed the proceeds to its credit, credited $1,000 on the note, and charged it with the same amount, leaving $8,000 as the balance due on the note. The proceeds of the note were used by the Mt. Vernon Bank in repurchasing from the Bank of Kentucky, Rockcastle county, warrants amounting to $5,370.86 which the latter had purchased from the former August 1, 1929, under a repurchase agreement, and the balance, which was placed to its credit, was used in meeting drafts on the latter drawn by the former. The collateral held by the Bank

of Kentucky as security for its $50,000 indebtedness was then pledged as security for the $8,000 indebtedness, and the Rockcastle warrants were pledged as security for the entire indebtedness. The Mt. Vernon Bank was then in a precarious financial condition. The additional credit thus given to it by the Bank of Kentucky was to enable it to continue in business. It was understood that the additional indebtedness of $8,000 was in excess of what the Mt. Vernon Bank had power to incur, and steps were taken to cover it, by amending its charter, but the contemplated action was not put through. On April 4, 1930, two other banks, one in Mt. Vernon and the other at Broadhead in the same county, came to the rescue of the Mt. Vernon Bank by purchasing certain of its notes for $30,000. The bank of Kentucky accepted a renewal of its note for $8,000 on April 5, 1930, and renewals of its other notes in the course of the month as they became due. It was thought that those steps would enable the Mt. Vernon Bank to continue to operate, but they were of no avail. On April 22, 1930, it was compelled to close. The state banking commissioner took charge of its affairs and appointed defendant Hiatt as its receiver. At that time the notes held by the Bank of Kentucky were to mature as follows:

| $ 8,000.00 | note | April 28, 1930 |
| 10,000.00 | note | May 7, 1930 |
| 20,000.00 | note | May 14, 1930 |
| 20,000.00 | note | May 19, 1930 |

There was to the credit of the Mt. Vernon Bank $1,980.81, which it applied to its indebtedness. On May 20, 1930, the Bank of Kentucky sent all its collateral to the defendant receiver of the Mt. Vernon Bank to collect and apply proceeds in payment of its indebtedness. The collateral consisted of notes amounting to $148,949.72 and the Rockcastle warrants, above referred to, for $5,370.86. The defendant receiver testified that this collateral was received by him "just as a matter of trust." Thereafter he made collections on account of this collateral and remitted same to the Bank of Kentucky. It applied them first to payment of the $8,000 note, which was the first to become due. They resulted in its payment on August 28, 1930. Thereupon the Bank of Kentucky returned the $8,000 note to the defendant receiver as paid in full. He testified that he gave no directions as to the application of the remittances made by him of the collections on account of the collateral —that the $8,000.00 note was received by him from the Bank of Kentucky as paid—and that he recognized same as paid in full. On No-

vember 17, 1930, the Bank of Kentucky closed its doors, and a receiver was appointed for it, who has been succeeded by the plaintiff. On May 27, 1931, the defendant receiver had remitted to plaintiff from collections on account of the collateral held by him sufficient to reduce the indebtedness on account of the three notes for $50,000 to $8,436, and he had in his hands that amount so collected. Instead of remitting same to the plaintiff as required by his trust, he proposed to appropriate same in reimbursing himself on account of the amount paid in satisfaction of the $8,000 note and to hold the rest of the collateral in his possession as free from any claim on the part of the plaintiff. The plaintiff refused to accede to this, and demanded payment of the $8,436 belonging to it and in defendant receiver's possession in satisfaction of the balance due on the Bank of Kentucky indebtedness. Thereupon it was agreed that the $8,436 should be paid to the defendant Title Trust Company as stakeholder, to be paid as thereafter designated by the parties or by order of any court of competent jurisdiction. Hence this suit.

I think that the plaintiff is entitled to recover for three reasons.

■ (1) The plaintiff was entitled to have the $8,436 paid to him in accordance with the trust under which the defendant receiver held it whatever may be the correct position as to whether the latter had a claim against the former for the amount paid in satisfaction of the $8,000 note. It was his duty to make such payment, and, if he thought he was entitled to reimbursement, to bring suit against plaintiff therefor.

■ (2) The defendant receiver is not entitled to recover such payment from the plaintiff whether he was bound to make it or not. He knew what he was doing when he consented to the payment of the $8,000 note out of the collections made from the collateral. I know of no equitable ground upon which he is entitled to recover same.

In the case of Bell & Coggeshall Co. v. Kentucky Glass-Works Co., 106 Ky. 7, 50 S. W. 2, 1092, 51 S. W. 180, a corporation whose power to incur indebtedness was limited by its charter to $8,000 incurred an indebtedness of $48,000, and gave a mortgage to secure it. Afterwards it became insolvent, and made an assignment for the benefit of its creditors. In a contest between the mortgagee and general creditors, it was held that the mortgage as against them was good only to the extent of $8,000. After the assignment, the assignee made payments to the mortgagee without designating their application. The question arose as to how they should be applied, to the $8,000 for which the mortgage was held to be good, or to the rest of the indebtedness. It was held that they should be applied to reduce the $8,000. The court said: "Those payments were made by the assignee after the estate came into his hands for the purpose of being administered and distributed to the creditors of the assignor, with due regard to their priorities. It is not to be presumed, therefore, that the assignee made any payment upon any claim to any creditor, except in the order in which such claim was entitled to payment out of the fund in his hands as assignee. Payments otherwise made, unless the estate proved sufficient to pay all claims of higher grade, would have been illegal, and the assignee would not have been entitled to credit therefor. But, being presumed to have made on the claim with respect to which the bank was entitled to priority, those payments must be applied to the reduction of that claim, viz. the $8,000 held to be secured by the mortgage; and the assignee is therefore entitled to credit for those payments in the settlement of his accounts."

This was as much as to say that, if the assignee had directed the application of the payments to the indebtedness in excess of the $8,000, they would stand. The creditors' remedy would be to see that the assignee did not get credit for such payments. Here it is true the defendant receiver did not give directions that his payments be applied to the $8,000 debt. He gave no directions at all. The Bank of Kentucky applied the payments thereto, and he acquiesced in it and consented to such application.

■ (3) The defendant receiver not only had the right, but was bound, to pay the $8,000 debt out of the proceeds of the collateral. The transaction, it is true, was ultra vires and known to be so by both parties. But the Mt. Vernon Bank cannot repudiate it and hold on to what it received. It received the whole $8,000. The matter is thus put in 7 R. C. L. pp. 678 and 679:

"According to what would seem to be the more logical view, a corporation, though it has received the benefits of a strictly ultra vires contract is not estopped to set up the defense of ultra vires when sued upon the contract, though it is universally recognized that recovery may at least be had on a quantum meruit for the benefits received by the corporation. A corporation cannot violate its charter for pecuniary gain and retain the

benefits of its illegal conduct by putting up the shield of ultra vires."

Again it is said: "In many jurisdictions the plea of ultra vires is looked on with such disfavor that the rule seems to prevail that if the corporation has received the benefits growing out of a contract, such contract will be enforced against it, unless it was entered into through fraud, or there are persuasive considerations of public policy involved."

In the case of In re Kentucky Wagon Mfg. Co. (D. C.) 3 F. Supp. 958, 964, I had this to say: "A contract of a corporation may be ultra vires and yet if it receives the fruits or benefits of the contract it cannot escape liability. This principle has been applied in the case of National Banks. American Nat. Bank v. Nat. Wallpaper Co. (C. C. A.) 77 F. 85; Portsmouth, etc., Corp. v. Fourth Nat. Bank, supra [(D. C.) 280 F. 879]; Fourth Nat. Bank v. Portsmouth, etc., Corp., supra [(C. C. A.) 284 F. 718]; Citizens' Central Nat. Bank v. Appleton, 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443; Rankin v. Emigh, 218 U. S. 27, 30 S. Ct. 672, 54 L. Ed. 915."

In the case of Lewis v. Fifth-Third National Bank of Cincinnati, 274 F. 587, 594, the appellate court of this circuit said: "Undoubtedly a private corporation may defend against an action to enforce.an executory contract upon the plea of ultra vires, where neither party has performed, or it may repudiate an ultra vires contract, upon making full restitution to the other contracting party, but the authorities are uniform that it cannot keep the property of another obtained under and by the terms of such contract, and refuse performance on its part upon the theory that the contract is ultra vires its charter powers; otherwise, the plea of ultra vires would degenerate into a mere instrumentality of fraud, deceit, and dishonesty, by means of which a corporation might appropriate to its own use the private property of others, without fear of punishment or the necessity of making restitution."

But in this state it may be said that, when a corporation becomes insolvent and its assets are distributed amongst its creditors, those whose debts do not exceed the charter limit of indebtedness have the right to have those whose debts do excluded from participating in such distribution until they are paid in full. The cases which may be relied on as so holding are First National Bank of Covington v. D. Kiefer Milling Co., 95 Ky. 97, 23 S. W. 675; Bell & Coggeshall Co. v. Kentucky Glass-Works Co., supra; Citizens' Bank v. Bank of Waddy, 126 Ky. 169, 103 S. W. 249, 11 L. R. A. (N. S.) 598, 128 Am. St. Rep. 282; American Southern Nat. Bank v. Smith, 170 Ky. 512, 186 S. W. 482, 486, Ann. Cas. 1918B, 959.

The matter is thus put in the last case: "We are cited to a great number of cases from many states, as well as from the federal courts, to the effect that a corporation, as such, when sued upon the character of contract under consideration, cannot rely upon the want of its power to make the contract, without returning to the other party the consideration which it received, but in each case the facts were that the corporation which had exceeded its powers, and which the courts said must do equity by returning the consideration, was a solvent and going concern. No question as to the right of creditors was involved, and the holding of the courts in such cases may be conceded to be correct, especially so far as this case is concerned, because those composing the corporation, being the stockholders, could not complain, as they had received the consideration and perhaps appropriated it for corporate purposes. The creditors of such corporations could not complain because they were only interested to the extent of their respective debts, and as the corporation was solvent, thus guaranteeing the payment of its debts, there remained nothing upon which the ultra vires nature of the contract could operate. As neither the corporation nor the stockholders in such a case could complain, and there being no necessity for a creditor to complain, there existed no obstacle in the way of applying the doctrine contended for. The rule, however, is altogether different when the borrowing corporation to such an ultra vires contract is insolvent."

The reason for this position is thus stated in Bell & Coggeshall Co. v. Kentucky Glass-Works Co., supra: "A creditor whose own debt against the corporation does not transgress the limitation—who does not know, and has no reason to know, that the limitation has been exceeded—has a right to rely upon the 'implied warranty on the part of the corporation, through its officers, that the power has not been exhausted, and that the conditions do not exist which render it unlawful for the corporation to contract the debt.' And this reason, it seems to us, applies equally as against the creditor who participated in creating the excessive indebtedness, and was bound to know that it was so doing."

I gather, however, from the decision in the case of Lewis v. Fifth-Third National Bank

of Cincinnati, which involved the same banking corporation as that involved in the case of American Southern National Bank v. Smith, supra, and like it arose after its insolvency, that such is not the doctrine of general jurisprudence, and that apart from statute is not binding on this court. It said: "The rights and remedies of the parties to this ultra vires contract are questions of general jurisprudence, and therefore the decision in that respect is not controlling, but must be decided by this court upon the facts in this case."

It held that the decision in the Smith Case was not binding upon it because that was a suit on behalf of creditors and the one in hand was not. It indicated that, if the suit were on behalf of creditors, it would have been bound to follow it, inasmuch as it was based on the statutes of this state. It said: "This decision is based upon a construction of the statutes of that state, and to that extent is controlling upon this court."

But I would submit that the decision in upholding the creditor's rights was to no extent based upon such statutes. What it held was based thereon was the right of the banking commissioner to assert such right. The right of the creditors was based on general jurisprudence as the above extract from the opinion therein clearly shows.

But I find nothing in these decisions justifying the position that, in a case where it is clear that complaining creditors have received the benefit of the consideration for the ultra vires contract, the obligee should be excluded from his rights thereunder. In neither one of them was it clear and certain that they had received such benefit, and in one, if not two of them, it was clear and certain that they had not. In case of First National Bank of Covington v. D. Kiefer Milling Co., the secretary of the borrowing company had received the money loaned, appropriated it to his own use, and fled the state. In the case of American Southern National Bank v. Smith the loan had been made in 1907, and the debtor bank was placed in the hands of the banking commissioner in 1914, seven years later. It was contended "that the creditors of the Alexander Bank have not been deprived of anything, and their rights, consequently, not impaired, because that bank, at the date of the borrowing of the money, got value received, and consequently the assets of the bank were not depleted, or impaired, and therefore the creditors have no equities justifying the plaintiff as their representative, in prosecuting this action."

To this the court responded: "In reply it may be said, that it is exceedingly likely that many of the creditors of the Alexander Bank, at the time the commissioner took charge of its affairs, may not have been such in 1907, at the date of the borrowing of the money. Furthermore, the purpose of the limitation is to not allow the officers of the bank to have an opportunity to misappropriate by way of unauthorized dividends, or otherwise, the proceeds of an unauthorized borrowing, and thus imperil the security of creditors by unlawfully increasing the indebtedness of the corporation."

Here it is reasonably certain that the creditors of the Mt. Vernon Bank did receive the benefit of the consideration furnished for the ultra vires contract. It was made February 27, 1930. The bank was closed April 22, 1930. At the time of that transaction, the bank was undoubtedly being subject to a run by its depositors and this run kept up until its closure. It is very unlikely that any new deposits were made during that time. But, however that may be, it is certain that all the depositors received the benefit of the Rockcastle County warrants amounting to $5,370.86. It was amongst the collateral turned over to the defendant receiver May 20, 1930. He would hold on to these warrants and pay nothing for them. It is reasonable to infer that the creditors received the other consideration given for the contract complained of.

I am therefore constrained to hold that the plaintiff is entitled to a decree.