## CITIZENS' CENTRAL NATIONAL BANK OF NEW YORK v. APPLETON, RECEIVER OF THE COOPER EX-CHANGE BANK.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 113. Argued January 27, 28, 1910.—Decided February 21, 1910.

Although a contract made by a corporation may be illegal as *ultra vires*, an implied contract may exist compelling it to account for the benefits actually received.

A national bank which guarantees a loan made by another bank in pursuance of an agreement that it be paid the amount due it by the borrower out of the proceeds of the loan, cannot avoid its liability for the amount actually received by it pursuant to the arrangement on the ground simply of *ultra vires;* it may be liable for money had and received.

190 N. Y. 417, affirmed.

THE facts are stated in the opinion.

*Mr. John A. Garver,* with whom *Mr. James M. Beck* was on the brief, for plaintiff in error:

The rule, that corporations have no powers except those expressly conferred by law or incidental to the exercise of their express powers, is peculiarly applicable to banks. *Logan County Bank* v. *Townsend,* 139 U. S. 67; *California Bank* v. *Kennedy,* 167 U. S. 362, 366.

Unusual safeguards are thrown about these institutions, not merely for the protection of those dealing with them but also for the benefit of the general public and even of the governments under which they exist. In the statutes under which they are organized, their powers are not merely defined in general terms, as is the case with most corporate statutes, but they are enumerated with explicit detail. *McCulloch* v. *Maryland,* 4 Wheat. 316; *Osborn* v. *Bank of United States,* 9 Wheat. 738; *Farmers' Nat. Bank* v. *Dearing,* 91 U. S. 29; *Davis* v. *Elmira Savings Bank,* 161 U. S. 275, 283; *McClellan* v. *Chip-*

*man,* 164 U. S. 347; *Owensboro Nat. Bank* v. *Owensboro,* 173 U. S. 664; *Easton* v. *Iowa,* 188 U. S. 220, 238.

It was an important object on the part of Congress to create and maintain confidence in the national bank system. *Mc-Cormick* v. *Market Bank,* 165 U. S. 538, 552.

Powers are conferred upon national banks by Rev. Stat., § 5136, and this statute is the sole measure of those powers. *Bank of United States* v. *Dandridge,* 12 Wheat. 64, 68.

The exercise of powers not expressly granted to national banks is prohibited. *First Nat. Bank* v. *Nat. Exchange Bank,* 92 U. S. 122, 128; *California Bank* v. *Kennedy,* 167 U. S. 362, 367; *Concord Bank* v. *Hawkins,* 174 U. S. 364.

Unless expressly empowered by statute, corporations have no power to act as accommodation indorsers or guarantors, even for a consideration. *Commercial Nat. Bank* v. *Pirie,* 82 Fed. Rep. 799; *Bowen* v. *Needles &c. Bank,* 94 Fed. Rep. 925.

Provision is usually made in the general laws of the States for the organization of corporations authorized to execute surety bonds and contracts of guaranty and indemnity; and, in New York, only corporations thus organized have the power to guarantee. *Nat. Park Bank* v. *German-American Ware-housing Co.,* 116 N. Y. 281, 292; *Fox* v. *Rural Home Co.,* 90 Hun, 365; aff'd 157 N. Y. 684.

The Court of Appeals conceded that the contract of guaranty was *ultra vires* and that no action could be maintained upon it. That is undoubtedly the law in this court, which holds that an *ultra vires* contract is no contract at all and that no liability can be predicated upon it. *Thomas* v. *Railroad Co.,* 101 U. S. 71; *Pennsylvania R. Co.* v. *St. Louis &c. R. Co.,* 118 U. S. 290; *Oregon R. Co.* v. *Oregonian R. Co.,* 130 U. S. 1; *Pittsburgh &c. R. Co.* v. *Keokuk Bridge Co.,* 131 U. S. 371; *Central Transportation Co.* v. *Pullman Car Co.,* 139 U. S. 24; *St. Louis &c. R. Co.* v. *Terre Haute &c. R. Co.,* 145 U. S. 393; *Union Pacific R. Co.* v. *Chicago &c. R. Co.,* 163 U. S. 564; *McCormick* v. *Market Bank,* 165 U. S. 538; *Railway Company* v. *Trust Company,* 174 U. S. 553.

It makes no difference that the defendant may have received benefit from the contract. *California Bank* v. *Kennedy,* **167** U. S. 362; *Concord Nat. Bank* v. *Hawkins,* 174 U. S. 364; *Merchants' Nat. Bank* v. *Wehrmann,* 202 U. S. 295.

The decision below was based upon principles of state law which are contrary to those recognized in this court.

The National Bank Act provides a complete system for the establishment and government of national banks. *Cook County Bank* v. *United States,* 107 U. S. 445, 448.

In so far, therefore, as the Court of Appeals sought to ignore the decisions of this court, by applying a doctrine contrary to that which is recognized here, it disregarded the statute.

The necessity for uniform construction has been recognized by this court. *Tullock* v. *Mulvane,* 184 U. S. 497, 505; *Yates* v. *Jones Nat. Bank,* 206 U. S. 158.

The National Bank Act is the supreme law of the land to national banks, and a state statute which attempts to authorize the exercise of a power or impose a liability not permitted by that act, is a nullity. *Farmers' Nat. Bank* v. *Dearing,* 91 U. S. 29; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 558; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 237. *People's Bank* v. *National Bank,* 101 U. S. 181, and *Cochran* v. *United States,* 157 U. S. 286, relied on below, are not applicable; and see *Bank of Genesee* v. *Patchin Bank,* 13 N. Y. 309, 314; *Commercial Nat. Bank* v. *Pirie,* 82 Fed. Rep. 799; *Bowen* v. *Needles Nat. Bank,* 94 Fed. Rep. 925.

The method actually employed cannot be disregarded, nor can a void and unlawful transaction be rendered valid merely because the result might have been attained in a lawful manner.

*Mr. John W. Hutchinson, Jr.,* and *Mr. Julius M. Mayer,* with whom *Mr. H. Snowden Marshall* was on the brief, for defendant in error:

The defendant in error is entitled to recover the $10,000

which it gave up on the faith of the guaranty and which was received by the guarantor.

An action for money had and received is exactly appropriate. 27 Cyc. 858; *Gaines* v. *Miller*, 111 U. S. 395, 397.

While it is conceded that under the decisions of this court a party cannot recover upon an *ultra vires* contract it has never been held in this court or in any other jurisdiction that a party can retain what it has received under such a contract, and refuse to perform the contract on the ground that it is *ultra vires*. *Logan County Bank* v. *Townsend*, 139 U. S. 67; *Aldrich* v. *Chemical National Bank*, 176 U. S. 618.

As said in the opinion of the Court of Appeals, whatever the difference of view there may be as to the effect of *ultra vires* on corporate contracts, in no jurisdiction can a party retain what it has received under such a contract and refuse to perform the contract, and see also *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 644; *United States* v. *State Bank*, 96 U. S. 30, 36; *Louisiana* v. *Wood*, 102 U. S. 294; *Pullman's Car Company* v. *Transportation Co.*, 171 U. S. 138, 151.

The transaction was not such a contract of guaranty as is forbidden to be made by national banks, but was a written promise made to a third party for the purpose of collecting an existing debt and is therefore an enforceable obligation.

The lack of power, however, to guarantee the payment of obligations, which is prohibited because not expressly conferred, refers to the business of guaranteeing debts, or to a transaction the very purpose of which is to guarantee for profit as a commercial risk the payment of another's obligation.

It is, however, the duty of a national bank to collect the debts owing to it, and, in that connection, it has frequently become necessary for a national bank to engage in transactions or to accept payment or security in a manner and of a character not permissible as an original or initial transaction. *American National Bank* v. *National Wall Paper Co.*, 77 Fed. Rep. 85; *Morris* v. *Third National Bank of Springfield*, 142 Fed.

Rep. 25; *National Bank* v. *Case,* 99 U. S. 628; *First National Bank* v. *National Exchange Bank,* 92 U. S. 122; *Cockrill* v. *Abeles,* 86 Fed. Rep. 505; *Central R. R. & Banking Co. of Georgia* v. *Farmers' Loan & Trust Company,* 114 Fed. Rep. 263. *People's Bank* v. *National Bank,* 101 U. S. 181, and *Cochran* v. *United States,* 157 U. S. 286, are decisive upon the question at bar.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was commenced in the Supreme Court of New York by the Receiver of the Cooper Exchange Bank, a New York corporation, against the Citizens' Central National Bank of New York, a national bank corporation formed by the consolidation (Rev. Stat., §§ 5220 and 5221) of the Central National Bank of the city of New York with the National Citizens' Bank of the same city. The action was dismissed on demurrer to the complaint, and that judgment was affirmed in the Appellate Division. 116 App. Div. 404. But on appeal to the highest court of New York the judgment was reversed, 190 N. Y. 417, and the cause was remitted to the Supreme Court of that State for judgment in accordance with the opinion of the former court.

The complaint alleges—

That the defendant, the Citizens' National Bank of New York, by the consolidation referred to, acquired all the assets and became subject to the liabilities of the Central National Bank of that city;

That on and prior to January 4th, 1904, one Michael Samuels was indebted to the Central National Bank in the sum of $10,000;

That "at tne instance and request of Samuels, trading under the name of Mikael Samuels & Co., *and the Central National Bank of the city of New York,*" the Cooper Exchange Bank loaned and advanced to the former the sum of $12,000, Samuels executing his written obligation, dated January 4th,

1904, to return or repay the same on or before four months after date with interest, and *at the same time* the Central National Bank of the city of New York, under seal, executed a written guaranty for the payment of the debt, as follows: "For and in consideration of one dollar and other good and valuable considerations, the Central National Bank of the city of New York hereby guarantees to the Cooper Exchange Bank the payment at maturity of a loan of twelve thousand dollars, made this day to Mikael Samuels & Co. by the Cooper Exchange Bank;"

That previous to the obtaining of said loan of $12,000, Samuels "agreed with the said Central National Bank to pay to it the said sum of $10,000 *of the said* $12,000 *so obtained,* and the said loan was obtained by the said Mikael Samuels and was guaranteed by the said Central National Bank *in order that the said Central National Bank might obtain the said sum of* $10,000, which it did receive and which was owed to it by the said Samuels;"

That previous to the maturity of the loan, namely, on January 30th, 1904, only a few weeks after the loan was made, Samuels was adjudged a bankrupt; and,

That no part of said loan had ever been paid, except $1,000, which was paid April 7th, 1906.

The Court of Appeals of New York—Cullen, C. J., delivering the opinion—held and the counsel for the Cooper Exchange Bank conceded in that court, that no recovery could be had against the guaranteeing bank in excess of the amount actually received by it out of the $12,000 loaned, as above stated. 190 N. Y. 417. The case being remitted to the inferior state court, judgment was therefore rendered against the defendant only for $10,000, with interest from January 4th, 1904, with costs in all courts.

The plaintiff in error insists that the guaranty given by the Central National Bank to the Cooper Exchange Bank was beyond its power, was in violation of the National Banking Act, and, therefore, could not be made the foundation of an

action against the guarantor bank. But this action need not be regarded as one on the written contract of guaranty, but as based on an implied contract between the Cooper Exchange Bank and the Central National Bank, whereby the latter, under the circumstances disclosed by the record, came under a duty to account to the former for the $10,000 *of the* $12,000 actually paid to Samuels *at its request and on its guaranty*. The law would be very impotent to do justice if it could not, under those circumstances and without violating established legal principles, compel the Central National Bank to recognize and discharge that duty. Samuels owed the Central National Bank $10,000, and—with knowledge perhaps of his financial condition—he was put forward by that bank to obtain $12,000 from the Cooper Exchange Bank so that it could get $10,000 *out of that sum*, for its own use. The circumstances show that the latter bank would not have loaned the money to Samuels except at the request and on the guaranty of the Central National Bank. All this, it may be observed, occurred under a previous agreement between the Central National Bank and Samuels, that that bank was to have $10,000 of the $12,000 in discharge of its claim upon him. In short, the Central National Bank, by means of the device mentioned, got $10,000 of the money of the Cooper Exchange Bank for its own use, and having used it for its own benefit, it now seeks to avoid liability therefor, upon the ground that it was not allowed by the law of its creation to execute the guaranty in question. We know of no adjudged case that stands in the way of relief being granted as asked by the plaintiff. But there are many that will authorize such relief.

In *Logan County National Bank* v. *Townsend*, 139 U. S. 67, 74, it appears that a national bank purchased, at a stipulated price, certain municipal bonds, which it agreed to return to the seller upon demand or replace them at the same or a less price. Demand was subsequently made on the bank to return or replace the bonds according to the agreement. But it failed to do either, and when sued for the value of the bonds it

pleaded, as a defense, the absence, under the law of its creation, of any authority or power on its part to make the above contract. This court said: " If it be assumed, in accordance with the bank's contention, that it was without power to purchase these bonds, to be replaced to the plaintiff, on demand, the question would still remain, whether, notwithstanding the act of Congress defining and limiting its powers, it was exempt from liability to the plaintiff for the value of the bonds, if it refused, upon demand, to replace or surrender them at the same or a less price. And from the time of such demand and its refusal to return the bonds to the vendor or owner, it becomes liable for their value upon grounds apart from the contract under which it obtained them. It could not rightfully hold them under or by virtue of the contract, and, at the same time, refuse to comply with the terms of purchase. If the bank's want of power, under the statute, to make such a contract of purchase may be pleaded in bar of all claims against it based *upon the contract*—and we are assuming, for the purposes of this case, that it may be—it is bound, upon demand, accompanied by a tender back of the price it paid, to surrender the bonds to its vendor. The bank, in this case, insisting that it obtained the bonds of the plaintiff in violation of the act of Congress, is bound, upon being made whole, to return them to him. No exemption or immunity from this principle of right and duty is given by the national banking act. 'The obligation to do justice,' this court said in *Marsh* v. *Fulton County*, 10 Wall. 676, 684, 'rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independently of any statute, will compel restitution or compensation.' "

The case of *Aldrich* v. *Chemical National Bank*, 176 U. S. 618, is equally in point. A vice-president of a national bank, without authority from it, borrowed money from another national bank, and placed the amount in still another bank to the credit of the bank which he assumed to represent in the transaction. The national bank in whose name the

money was deposited drew the money out by check and applied it in discharge of its own valid obligations; and when it was sought to hold it liable, the defense, in part, was that the original borrowing was not only unauthorized by it, but was in violation of the National Banking Act. Upon an extended review of the authorities this court said: "As the money of the Chemical Bank was obtained under a loan negotiated by the vice-president of the Fidelity Bank who assumed to represent it in the transaction, and, as the Fidelity Bank used the money so obtained in its banking business and for its own benefit, the latter bank having enjoyed the fruits of the transaction, cannot avoid accountability to the New York bank, even if it were true, as contended, that the Fidelity Bank could not consistently with the law of its creation have itself borrowed the money. . . . If the latter bank in this way used the money obtained from the Chemical Bank, it is under an implied obligation to pay it back or account for it to the New York bank. It cannot escape liability on the ground merely that it was not permitted by its charter to obtain money from another bank. Suppose the Fidelity Bank, by its check upon the Chemical Bank, had drawn the whole $300,000 at one time, and now had the money in its possession unused? It would not be allowed to hold the money even if it were without power under its charter to have borrowed it from the Chemical Bank for use in its business. Or suppose a national bank, in violation of the act of Congress, takes as security for a loan made by it a deed of trust of real estate, and subsequently causes the property to be sold and the proceeds applied in payment of its claim against the borrower, a surplus being left in its hands, which it uses in its business or in discharge of its obligations. If sued by the borrower for the amount of such surplus, could the bank successfully resist payment upon the ground that the statute forbade it to make a loan of money on real estate security? Common honesty requires this question to be answered in the negative. But it could not be so answered if it be true that the Fidelity Bank could

use in its business and for its benefit money obtained by one of its officers from another bank under the pretence of a loan, and be discharged from liability therefor upon the ground that it could not itself have directly borrowed from the other bank the money so obtained and used. There is nothing in the acts of Congress authorizing or permitting a national bank to appropriate and use the money or property of others for its benefit without liability for so doing."

These views are supported by many other adjudged cases. In *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24, 60, the court, speaking by Mr. Justice Gray, said: "A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm the unlawful contract." So, in *Pullman's Car Co.* v. *Transportation Co.*, 171 U. S. 138, 151, the court, speaking by Mr. Justice Peckham, said: "The right to a recovery of the property transferred under an illegal contract is founded upon the implied promise to return or to make compensation for it." Other cases are cited in the margin.[1]

---

[1] *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 644; *United States* v. *State Bank*, 96 U. S. 30, 36; *Louisiana* v. *Wood*, 102 U. S. 294; *Parkersburg* v. *Brown*, 106 U. S. 487, 503; *Read* v. *Plattsmouth*, 107 U. S. 568; *Dittey* v. *Dominion National Bank of Bristol*, 43 U. S. App. 613, 615; *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Massachu-

We need not go farther. It is entirely clear that the judgment against the defendant bank—which came into the possession of the property, and was subject to the liabilities of the Central National Bank—was consistent with sound legal principles and was intrinsically right, even if the guaranty in question was beyond the power of the guaranteeing bank, under the national banking statutes. Whatever may be said as to the validity of the written guaranty, now alleged to be illegal, the judgment can be supported as based wholly on the implied contract, which made it the duty of the Central National Bank, under the facts disclosed, to account to the Cooper Exchange Bank for the money obtained from the latter in execution of the agreement made by the former with the borrower.

The judgment must be affirmed.

*It is so ordered.*

setts, 268; *Perkins* v. *Boothby,* 71 Maine, 94, 97; *Bank of Lakin* v. *National Bank,* 57 Kansas, 183.