No. 11,615.

STOCK YARDS NATIONAL BANK *v*. BROWN.

Decided April 11, 1927.   Rehearing denied May 9, 1927.

Action on promissory notes.   Judgment for defendant on counterclaim.

*Affirmed.*

1.   BANKS AND BANKING—*Promissory Notes—Guaranty.* In an action on promissory notes, evidence reviewed and held to establish that plaintiff national bank guaranteed payment of notes upon which defendant based a counterclaim, and upon which it loaned money at plaintiff's request.

2.   *Promissory Notes—Guaranty—Ultra Vires.* Although bank guaranty of payment of notes to another bank may have been ultra vires under the national banking act, the guaranteeing bank is held liable to the extent of the benefit derived by it from the notes, proceeds of which were used in wiping out an overdraft owing it by the maker of the notes.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Messrs. PONSFORD, PENDER & LARWILL, for plaintiff in error.

Messrs. DOUD & WALKER, for defendant in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

SUIT by Stock Yards National Bank of Denver on a promissory note. Defendant answered and set up a counterclaim which was allowed, by reason of which allowance, the bank brings the case here for review. The parties will be referred to as in the trial court. No question is raised about defendant's note to plaintiff. The dispute is solely over the allowance of the counterclaim.

Brown was cashier and principal stockholder of The Palisades National Bank in western Colorado. One Butcher was president of the Stock Yards National Bank of Denver and one Casteel was the vice president thereof. Both were active in the management of its affairs. The Denver bank had been the correspondent of the Palisades bank. The latter had a surplus and wanted to buy paper on which there would be no loss. Brown and Butcher, upon behalf of their several banks, arranged it accordingly, Butcher agreeing that any paper *coming from them* would be taken care of. Brown construed this and other representations as a guaranty. Thereafter Brown and the Palisades bank handled paper in large amounts from the Denver bank.

Casteel, in addition to his connection with the Denver bank, was an official active in the management of The Pioneer Crate and Basket Company, a Denver concern and a customer of the Denver bank. The Basket company needed money; it had overdrawn its checking account in the Denver bank in the sum of about five thousand dollars. Casteel telephoned from Denver to Brown at Palisades requesting the loan, which was accordingly

arranged.   On the same day, the following letter was
written:

"The Stock Yards National Bank of Denver
                                        May 10, 1921.
S. H. Brown, Cashier,
Palisades National Bank,
Palisades, Colorado.

Dear Mr. Brown:
   Inclosed find the two $2,500.00 notes, drawn for 90
days, as per our telephone conversation this morning.
You may supply the rate of interest, as we had not talked
of this.   Attach the revenue stamp, for which you will
find $1.00 inclosed.   You could then advise the bank here
to apply the amount to the credit of The Pioneer Crate
and Basket Company.
   You are aware of my connection with this Company
and are somewhat familiar with the business, which is
steadily increasing. · In view of my connection with the
company I do not want to accept their paper here at the
bank.   *   *   *
   Thanking you for this accommodation.
                          Very truly yours,
                              (Signed) Ira B. Casteel,
                                        Vice-President"
   Upon receipt of the letter with notes enclosed, the Pali-
sades bank credited the Denver bank with five thousand
dollars, and the latter applied the amount on the basket
company's overdraft.   The basket company failed to pay
the notes when due; they were renewed from time to
time, partially paid, but resulted in an ultimate deficit.
They were finally assigned to Brown, who owned them
when the suit was brought and they were pleaded by him
as a set-off and counterclaim.   Brown testified that he
tried to collect the notes and at one time he had a chance
to collect them by attachment proceedings, but was dis-
suaded by Butcher, who told him that "if the boat were
not rocked he would see the thing through."   Butcher,

president of the Denver bank, held no position with the basket company, so far as the record discloses.

1. The evidence of the original guaranty was sufficient; it was corroborated by the subsequent actions of the parties, showing that such was the understanding, but plaintiff claims that such guaranty is ultra vires, under the national banking act. However, even if ultra vires, the Stock Yards National Bank of Denver is liable to the extent of the benefit derived. *McCormick v. Market Bank,* 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817; *McFerson v. Kepner,* 76 Colo. 523, 233 Pac. 148 and cases there cited. To same effect, see *Citizens National Bank v. Appleton,* 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443.

The money loaned by the Palisades bank went directly to the Denver bank, and wiped out the overdraft of the customer of the Denver bank. It would be difficult to conceive of a more direct benefit to the Denver bank.

Plaintiff's counsel argues that Casteel was acting for the basket company in the request for a loan and in writing the above letter, but the trial court rightly construed it as the bank's letter, written by one of its officers and signed by him over his official designation as vice president. It was a confirmation of the telephone request for the loan made the same day. It was the act of the Denver bank. The Supreme Court of the United States under analagous circumstances in *Citizens National Bank v. Appleton, supra,* said that the action need not be regarded as one on the written contract of guaranty, but as based upon an implied contract.

Counsel for plaintiff seek to minimize the effect of its own bookkeeping entries by referring to them as "mere bookkeeping," but the bookkeeping helped to evidence the facts, which was all that was necessary. It is not claimed that the entries were fictitious, nor that the loan was imaginary. We have not overlooked the arguments of counsel for the Denver bank that it got no benefit because, they say, the overdraft was only "temporary," and was permitted in anticipation of the money to come

from Palisades. It may be said, however, that bankers generally regard all overdrafts as only temporary. Furthermore, an opposite view of the argument would be to say that it merely emphasizes the fact that the Denver bank had knowledge of the affair, participated in upon its behalf by its officers, and that it was looking for money from the Palisades bank to satisfy the basket company's overdraft, which money it actually got, and for which it courteously thanked its benefactor for the accommodation in the letter above quoted. The benefit went both to the Denver bank and its customer. We think also that counsel have somewhat confused this overdraft with subsequent alleged overdrafts, which, if they existed, have no bearing on this case.

The above decisions of the Supreme Court of the United States and of this court sustain defendant's contention. Other similar holdings in other states are cited in his brief, but the above are enough. These precedents are not overcome by the able oral argument and brief of counsel for plaintiff. We have considered all points raised and find no error. The judgment is affirmed.