## ERIE LIGHTING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3268.

Circuit Court of Appeals, First Circuit.

Dec. 31, 1937.

Bernhard Knollenberg, of New York City (Charles M. Trammell, of Washington, D. C., and Bradford S. Magill and Francis J. Sweeney, both of New York City, on the brief), for petitioner for review.

Joseph M. Jones, of Washington, D. C. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a petition for review of a decision and order of the Board of Tax Appeals determining deficiencies in the income tax of the petitioner for the year 1927 and the period of the year 1928 from January 1st to October 31st, of $56,266.-30 and $37,678.01, respectively.

The sole question in issue in the case is whether, during the taxable periods involved, the petitioner was affiliated with the Pennsylvania Electric Company and its parent, Associated Gas & Electric Company.

During the taxable periods there were outstanding 100,000 shares of the petitioner's preferred stock, of which a large part was in the hands of the public. The perti-

nent rights and limitations of the preferred stock are as follows:

"The holders of preference shares shall be entitled to receive out of the surplus or net profits of the said corporation, and the said corporation shall be bound to pay, quarterly cumulative dividends at the rate of $2.00 per share per annum, which quarterly dividends shall be paid, or set aside for payment, for each quarter before any dividend shall be declared or paid upon any other stock of said corporation; * *. * After all accumulated and accrued dividends on the preference shares have been declared and paid, or set aside for payment, dividends may be declared and paid out of the remaining surplus or net profits to holders of common shares at the rate of $2.00 per share per annum, and all additional distribution of surplus or net profits as dividends shall be made at the same rate per share to holders of stock of both classes." * * *

"The holders of the said preference shares shall have no power to vote the same at any election for directors unless the dividends on the said preference shares for two quarterly periods, whether consecutive or not, shall remain unpaid."

The provisions of the statutes applicable to this case are section 240(d) of the 1926 Revenue Act, 44 Stat. 46, and section 142(c) of the 1928 Revenue Act, 45 Stat. 832. Subdivision (d) of section 240 provides as follows:

"(d) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the stock of the other or others, or (2) if at least 95 per centum of the stock of two or more corporations is owned by the same interests. As used in this subdivision the term 'stock' does not include nonvoting stock which is limited and preferred as to dividends. This subdivision shall be applicable to the determination of affiliation for the taxable year 1926 and each taxable year thereafter."

With the exception of the last sentence, subdivision (c) of section 142 of the Revenue Act of 1928 reads exactly the same.

The decision of this case depends solely on whether the petitioner's outstanding preferred stock during the tax periods involved was "nonvoting stock which is limited and preferred as to dividends," within the meaning of the sections of the revenue acts above referred to.

The first statute authorizing the filing of a consolidated return by two or more affiliated corporations, section 240(b) of Revenue Act of 1918, 40 Stat. 1081, defined affiliated corporations as two or more corporations where one corporation owns or controls substantially all of the stock of its subsidiary or subsidiaries. The Commissioner of Internal Revenue realized that, if the statute were taken literally, although no definite percentage of stock required to be owned or controlled was stated, either great latitude must be permitted in this respect, or the purpose of the statute would be frustrated. If the control of substantially all of both voting and nonvoting stock were required, it could seldom be complied with, as preferred stock is not usually given voting power so long as the preferred dividends are met, and it is generally distributed to the public and seldom found in considerable quantities in the control of an allied corporation.

The Commissioner, to render the statute practical in its operation, by Article 633 of Regulation 45 issued under the act of 1918, provided that the "stock" referred to in section 240(b) must be construed as voting stock.

The same language was used in the Revenue Act of 1921, § 240(c), 42 Stat. 260, and the Commissioner in Article 633 of Regulation 62 under this act again restricted the word "stock" to voting stock, thus excluding preferred or other capital stock, under whatever name, that had no voting power in the control or management of the corporation's business.

In the Revenue Act of 1924, § 240(c), 43 Stat. 288, Congress practically adopted the Regulations of the Department and specifically provided that two corporations would be deemed affiliated if one owned or controlled substantially all the *voting stock* of the other.

Little advance in clarifying the construction of the law was made by this change in the wording of the statute over the wording of the Regulations under the acts of 1918 and 1921. The Commissioner and the Board and the courts, however, prior to 1926, consistently construed these acts to mean that preferred stock not having the right to vote for directors was not "voting stock." Schlafly v. United States, 8 Cir., 4 F.2d 195, 200.

■ The purpose of the provisions relating to affiliated companies was to enable corporations under one management to

make a consolidated return as though they were a unit in transacting business, and to avoid such a manipulation of intercompany transactions as would prevent the government from correctly ascertaining and collecting the sums as taxes that are justly due it. Schlafly v. United States, supra, 8 Cir., 4 F.2d 195 at page 200; Atlantic City Electric Co. v. Commissioner, 288 U.S. 152, 154, 53 S.Ct. 383, 384, 77 L.Ed. 667.

The Commissioner and the Board, in the construction of the acts prior to 1926, generally, whenever the question was raised, followed this rule, that the stock which must be taken into consideration in determining whether grounds for affiliation exist, was stock having a right to control the management of a corporation, as in the election of directors.

■ With such an established and recognized construction by the Department, Congress in enacting the 1926 and 1928 acts should be held to mean by "nonvoting stock" stock not having the right to vote for directors who control the management of the corporation. Massachusetts Mutual Life Insurance Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 339, 77 L.Ed. 739; National Lead Co. v. United States, 252 U.S. 140, 146, 40 S.Ct. 237, 239, 64 L. Ed. 496; Poe, Collector v. Seaborn, 282 U.S. 101, 116, 51 S.Ct. 58, 61, 75 L.Ed. 239; Costanzo v. Tillinghast, 287 U.S. 341, 53 S. Ct. 152, 77 L.Ed. 350.

It is admitted that the conditions have not arisen that give the preferred stock in this corporation a right to participate in the election of directors.

It is generally provided in all legislative acts and corporate charters that the management of the corporate business shall be intrusted to a board of directors. Fletcher's Cyclopedia of the Law of Corporations, vol. 3, § 1726. The statutes of Pennsylvania, the home state of the petitioner, provide that the business of every corporation shall be *managed* and conducted by a president and board of directors. The bylaws of the petitioner follow the statute.

■ The Board of Tax Appeals apparently based its conclusions that the preferred stock in this case was not deprived of all powers of control by reason of the fact that it could not vote for the election of directors, since it had the right to vote in regard to increase of capital stock, determine the number constituting the board of directors, the place of its principal office, time of stockholders' meetings, any increase of the capital indebtedness, reduction of the capital stock, and many other matters usually reserved to the stockholders; but these matters are not a basis for holding that two corporations do business as a single unit, or that the preferred stockholders control the management of the business enterprise. That is left to the board of directors.

It is suggested by the respondent that section 164 of title 15 of the Pennsylvania statute, 15 P.S., provides that, "Holders of nonvoting stock * * * shall not have the right to participate in any meeting of the stockholders," from which it infers that "nonvoting stock" must be absolutely without a right to vote at any meeting of stockholders, and if a stock has any limited right of voting, it cannot be nonvoting stock within the meaning of section 240(d) of the Revenue Act of 1926, or section 142(c) of the Revenue Act of 1928; but we think that this cannot be a proper construction of the term "nonvoting stock" under the federal statutes here involved.

It is not reasonable to suppose that Congress intended that the right of preferred stockholders to vote on a single question, such as the place of its principal office, or an increase of capital stock, but having no other voting rights, should constitute such stock voting stock within the meaning of the sections of the 1926 and 1928 acts above referred to, and prevent the Commissioner from requiring a corporation to file a consolidated return or the corporation from claiming affiliation with a parent company, other conditions existing to constitute affiliation. To so hold would amount to reductio ad absurdum.

"Voting stock may very properly be termed management stock." Thompson on Corporations, 3d Ed., vol. 5, § 3449.

The only rational construction consistent with the intent of Congress in passing these acts is that laid down in Schlafly v. United States, supra, and in the discussion of the Board in Pantlind Hotel Co. v. Commissioner, 23 B.T.A. 1206, 1207, 1210, 1211, in Detour Dock Company et al. v. Commissioner, 22 B.T.A. 925, and of the court in Commissioner v. City Button Works, 2 Cir., 49 F.2d 705; Atlantic City Electric Co. v. Commissioner, supra, 288 U.S. 152, 53 S.Ct. 383, 77 L.Ed. 667. While the facts in the last three cases are not entirely similar to the facts in this case, the discussion

of the court of the purpose and meaning of the statutes involved aids materially in determining the issue in this case.

Certain cases cited by the petitioner, including Commissioner v. Shillito Realty Co., 6 Cir., 39 F.2d 830, 832, 69 A.L.R. 1266; Rudolph Wurlitzer Co. v. Commissioner, 29 B.T.A. 443, affirmed 6 Cir., 81 F.2d 971, are also of help only in the discussion in the opinions, since in these cases the facts were different from the facts in this case. The court, however, in the first case said: "We think the term 'stock,' as used in the statute, is clearly intended to mean stock with a potential voting power which, if asserted, *will be effective in the management or control of the corporation.*" (Italics supplied.) The control discussed in Handy & Harman v. Burnet, 284 U.S. 136, 52 S. Ct. 51, 76 L.Ed. 207, related to control over the stock and not to control over the management of the corporation, and that case is in no way opposed to the language of the Shillito Case, supra.

Prior consistent construction of the statutes of 1918 and 1921 by the Commissioner, the Board, and the courts, and the Regulations of the Department, and the legislation of Congress in 1926 in view of the Department's construction of the meaning of "voting stock" in the prior acts, lead us to conclude that by "nonvoting stock" Congress, in the acts of 1926 and 1928, had in mind stock which had no vote in the election of directors and therefore had no control over the business management of the corporation, which is intrusted to the board of directors under the charter and by-laws of this corporation.

■ One other question is raised in this case. Section 240(d) of the 1926 act and section 142(c) of the 1928 act provide that "stock" in determining affiliation does not include "nonvoting stock which is limited and preferred as to dividends." It is claimed that all three qualifications must be present to preclude consideration of preferred stock in determining whether two corporations are entitled to file a consolidated return.

It is not necessary to determine whether, if the preferred stock of a corporation has no voting power to control the management of the corporate business, but is not limited as to dividends, it must be taken into consideration in determining whether two or more corporations are affiliated, since we think that, during the taxable periods of the years 1927 and 1928, the preferred stock of the petitioner was limited as to dividends.

The provisions as to preferred dividends are as follows:

"The holders of preference shares shall be entitled to receive out of the surplus or net profits of the said corporation, and the said corporation shall be bound to pay, quarterly cumulative dividends at the rate of $2.00 per share per annum, which quarterly dividends shall be paid, or set aside for payment, for each quarter before any dividend shall be declared or paid upon any other stock of said corporation; the first dividend upon said preference shares to be paid July 1, 1921, for the quarter beginning April 1, 1921. After all accumulated and accrued dividends on the preference shares have been declared and paid, or set aside for payment, dividends may be declared and paid out of the remaining surplus or net profits to holders of common shares at the rate of $2.00 per share per annum, and all additional distribution of surplus or net profits as dividends shall be made at the same rate per share to holders of stock of both classes."

It was stipulated by the parties in this case that "dividends were regularly paid upon the preference stock from the date of its issuance in 1921 up to and including the payment of July 1, 1928, at the rate of *only* fifty cents a share a quarter" (italics supplied), after which it defaulted on the dividend due October 1, 1928.

We think it is clear from this stipulation that, under the provision as to preferred dividends, this stock never received more than $2 a share during 1927 and up to October 1, 1928, and must be held to have been, during the taxing period here involved, limited as to dividends. That it might share equally with the common stock under more favorable conditions is immaterial. It clearly did not during the period in question. The Board of Tax Appeals under similar conditions in Vermont Hydro-Electric Corp. v. Commissioner, 29 B.T.A. 1006, took exactly the same view.

As the Board of Tax Appeals said in the Vermont Hydro-Electric Corp. Case, supra: "Under these circumstances we think the stock is, for the period in controversy, to be treated as stock limited as to dividends. The mere possibility that the stock in some particular taxable period might be entitled to dividends in excess of 7 percent no more makes it unlimited as to dividends than the possibility

that in some particular taxable period it might be entitled to voting rights makes it voting stock."

The preferred stock in this case, therefore, under the stipulation stands in the same position during the taxing period as if it were limited by its by-laws to a certain dividend as a preference and to no more.

The decision of the Board of Tax Appeals is reversed, and the case is remanded to the Board for further proceedings not inconsistent with this opinion.