## CITIZENS UNION NAT. BANK v. PHELPS, District Court Clerk.
### No. 7405.

Circuit Court of Appeals, Sixth Circuit.
April 5, 1938.

Leo T. Wolford, of Louisville, Ky. (Wm. Marshall Bullitt, Wm. H. Abell, and

764

Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellant.

Bunk Gardner, of Louisville, Ky. (James Garnett, Jr., of Louisville, Ky., on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and DRUFFEL, District Judge.

DRUFFEL, District Judge.

This is an appeal from a judgment on the pleadings ordered by the District Court for the Western District of Kentucky. From the record it appears that on January 9, 1931, Honorable Charles I. Dawson, then District Judge, designated appellant as a depository for moneys belonging to bankrupt estates, and approved its bond in the sum of $25,000, with government bonds as collateral in lieu of surety bond. The deposits of bankrupt estates having increased from time to time, the court, of its own motion, on July 12, 1932, ordered an additional bond in the sum of $40,000, and on March 3, 1933, again ordered an additional bond in the sum of $44,000, which bonds the court approved, with government bonds as collateral in lieu of surety bonds; the total collateral aggregating $109,000.

This collateral was kept by the clerk until October 25, 1935, when appellant requested its return, at which time the clerk demanded 1 per cent. of the par value thereof as a fee, in accordance with the provisions of chapter 16, title 28, U.S.C.A. § 555, Rev.St. § 828; June 28, 1902, c. 1301, § 1, 32 Stat. 476; Feb. 11, 1925, c. 204, § 8, 43 Stat. 858, which is as follows: "8. For receiving, keeping, and paying out money in pursuance of any statute or order of court, including cash bail or bonds or securities authorized by law to be deposited in lieu of other security, 1 per centum of the amount so received, kept and paid out, or of the face value of such bonds or securities."

The bank declined to pay the fee and the then District Judge, in an oral opinion, ordered the clerk to return the bonds, holding that it was not the clerk's duty to charge 1 per cent. upon the bonds returned.

Preparatory to going out of office on December 31, 1935, the clerk requested the Department of Justice to audit his accounts and report on all matters affecting his liability as clerk. After investigation the clerk was charged with unreported earnings of $1,090 under the above section, being 1 per cent. of the par value of $109,000 of bonds returned to appellant.

After demand for payment the clerk brought his action for $1,090. Defendant's answer alleged, among other things, that the clerk was not entitled to any part of the pledged bonds because he held them on behalf of the United States and that the statute does not allow him any fees for services performed on behalf of the United States and, also, when appellant pledged the bonds, which were part of its assets, to secure private bankruptcy deposits, such acts were ultra vires and the clerk not entitled to deduct a fee because the pledges were unauthorized and void. To this answer plaintiff moved to strike certain parts and demurred to the remainder. The court having sustained both the motion and demurrer, and the defendant not desiring to plead further, the court ordered judgment on the pleadings.

The principal point urged by appellant is that the Citizens Union National Bank's pledge of its assets with the clerk to secure private bankruptcy deposits was unauthorized by law and was ultra vires; that the clerk was not entitled to deduct a fee from the pledged bonds because the pledges thereof were unauthorized and void.

Appellant rests its case on the decision of the Supreme Court in Texas & Pacific Ry. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 417, 78 L.Ed. 777, decided February 5, 1934, in which the court say:

"National banks lack power to pledge their assets to secure a private deposit. The measure of their powers is the statutory grant; and powers not conferred by Congress are denied. * * * It is the settled doctrine of this court that no rights arise on an ultra vires contract. * * *

"The fact that this bank had frequently secured private deposits by surety bonds lends no support to the contention that the power to pledge assets is necessary to carrying on the business of deposit banking. Such a practice would likewise be a departure from the policy of equal treatment of depositors; but the loss to other depositors resulting from such action would be far less serious. A pledge withdraws capital assets, while the giving of a surety bond merely increases the bank's expenses."

An examination of the facts, together with an analysis of section 8, 28 U.S.C.A.,

§ 555, subd. 8, shows that the transaction in the instant case falls strictly within the letter of that act. Since the clerk received and kept the bonds on order of the District Court it would appear without question that he was entitled to his fee in accordance with the statute: "8. For receiving, keeping * * * in pursuance of any * * * order of court * * * bonds or securities * * * 1 per centum of the * * * face value of such bonds or securities."

Since both appellant and appellee agree that the pledge by the bank of said bonds which were part of its assets was an ultra vires act, the sole question to be determined is: Will this defeat the clerk's right to recover?

■■■■ The plea of ultra vires, where a corporation has made a profit in violation of its charter which it seeks to retain, is not a new one; in fact, the authorities are numerous. From a brief review of some of the leading cases it will appear that the courts have consistently and uniformly held that, as applied to executory contracts, the defense of ultra vires may be set up as a complete defense, but it is not favored when set up to retain profits procured in violation of its charter.

One of the early cases was that of San Antonio v. Mehaffy, 96 U.S. 312, at page 315, 24 L.Ed. 816, where Mr. Justice Swayne said: "The doctrine of ultra vires, whether invoked for or against a corporation, is not favored in the law. It should never be applied where it will defeat the ends of justice, if such a result can be avoided."

And in Williams v. American National Bank, 8 Cir., 85 F. 376, 379, the court expressly holds that: "It is no defense to an action for money had and received * * * to say that the collateral security it put up with the plaintiff was issued without authority."

It should be noted that the decision of the Supreme Court in the Pottorff Case is not inconsistent with its holdings in other ultra vires cases.

An examination of the facts in the Pottorff Case discloses that the bank sought to give preferential treatment to a railroad company to secure its deposits, contracting to pledge securities to guarantee return of said deposits at any time on demand. Upon failure of the bank the railroad sought to enforce the contract which was clearly ultra vires and, as was said by the court, "* * * no rights arose thereon."

It will be readily seen that the facts in the Pottorff Case do not parallel the facts in the instant case.

In a case more nearly in point, Citizens' Central National Bank v. Appleton, Receiver, 216 U.S. 196, 30 S.Ct. 364, 54 L. Ed. 443, the Supreme Court said: "Although a contract made by a corporation may be illegal as ultra vires, an implied contract may exist compelling it to account for the benefits actually received."

In that case the Supreme Court expressly approved the decision in the case of Central Transportation Co. v. Pullman's Palace Car Co., 139 U.S. 24, 11 S. Ct. 478, 488, 35 L.Ed. 55, wherein the court clearly enunciated the principle that: "A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it."

To the same effect is that of Logan County National Bank v. Townsend, 139 U.S. 67, 11 S.Ct. 496, 35 L.Ed. 107, where the Supreme Court unanimously affirmed the Court of Appeals of Kentucky, 3 S. W. 122, in holding that the bank would not be permitted to retain a profit procured by its own wrong in violation of a charter under which it exists.

In the instant case, the appellant having had the use of the bankrupt funds for approximately three years, it is fair to assume it made a profit therefrom, and as held in Citizens' Central National Bank v. Appleton, Receiver, supra, an implied contract may exist compelling it to account for the benefits actually received.

While we have no doubt, in view of the foregoing authorities, that the clerk would be entitled to recover as for money had and received, we feel that he should recover in accordance with his petition because, as said by the District Court, the obligation to pay the fee arises out of the statute and not out of the ultra vires

contract to which the clerk was not a party.

No error being found, the judgment of the District Court is affirmed.