**BELL, Secretary of Banking of Pennsylvania, v. DUNN.**

No. 2692.

District Court, E. D. Pennsylvania.

March 9, 1943.

William Brodsky and George J. Mallen, both of Philadelphia, Pa., for plaintiff.

Harry R. Matten (of Matten & Matten), of Reading, Pa., for defendant.

BARD, District Judge.

This action was instituted in the Court of Common Pleas of Berks County by the Secretary of Banking of the Commonwealth of Pennsylvania, as receiver of the Hirsh Luria Building and Loan Association, against the receiver of the Reading National Bank for breach of a written contract alleged to have been executed by the bank. After the case was removed to this court upon application of the defendant, he filed his answer to the complaint and subsequently moved, under Rule 12(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, for judgment on the pleadings. Plaintiff thereupon made application for leave to file an amended complaint so as to aver the authority of the cashier of the bank to execute the contract in suit and thus to preclude judgment on the ground that such authority was not averred in the original statement of claim filed. The filing of the amended complaint is hereby allowed and defendant's motion will be considered as if directed to the complaint as amended.

The amended complaint sets forth that one Liever was interested in effecting a merger of the Central Building and Loan Association with the Hirsh Luria Building and Loan Association. To accomplish this end he guaranteed to the Hirsh Luria the payment of $87,000 of mortgages owned by the Central and he pledged as security for this guaranty 175 double shares of the Hirsh Luria which he owned. Subsequently he assigned 100 of these shares to the Reading National Bank and 75 of them to one Hassel, both of these assignments being subject to the prior assignment thereof to the Hirsh Luria. The shares matured in 1930, when the agreement in suit was entered into among the Hirsh Luria, the Reading National Bank and Hassel. This agreement, after setting forth the above transactions, further recites:

"And, Whereas, the said Reading National Bank and Morris Hassel agreed at the time of the assignment of said shares to them that they will agree, and did agree,

156

that the amount realized from those shares at maturity to be applied against any losses sustained, or that may be sustained, by the Hirsh Luria Building and Loan Association, on mortgages of the Central Building and Loan Association, in an amount, however, not to exceed Eight Thousand ($8,000.00) Dollars, on the part of the one hundred (100) double shares assigned to the Reading National Bank, and Six Thousand ($6,000.00) Dollars, on the seventy-five (75) double shares assigned to Morris Hassel.

"Now, Therefore, the parties to this Agreement have agreed as follows:

"The Reading National Bank has agreed to permit the Hirsh Luria Building and Loan Association to retain the sum of Eight Thousand ($8,000.00) Dollars, which amount shall be repaid to the Reading National Bank at the rate of One Thousand ($1,000.00) Dollars per annum and Interest, providing no loss is sustained on any of the mortgages assigned by the Central Building and Loan Association to the Hirsh Luria Building and Loan Association.

"And, the said Morris Hassel has agreed to permit the Hirsh Luria Building and Loan Association to retain the sum of Six Thousand ($6,000.00) Dollars, which amount shall be repaid to him at the rate of Seven Hundred Fifty ($750.00) Dollars per annum, providing no loss is sustained on any of the mortgages assigned by the Central Building and Loan Association to the Hirsh Luria Building and Loan Association.

"The Reading National Bank does hereby agree that in the event of any loss sustained by the Hirsh Luria Building and Loan Association from the non-payment of said mortgages, interest, etc., that they, the Reading National Bank, will pay eight-fourteenths (8/14ths) of said loss, which sum, however, is to be deducted from the Eight Thousand ($8,000.00) Dollars retained by the Hirsh Luria Building and Loan Association, and the said Morris Hassel does hereby agree that in the event of any loss sustained by the Hirsh Luria Building and Loan Association from the non-payment of said mortgages, interest, etc., that he, Morris Hassel, will pay six-fourteenths (6/14ths) of said loss, which sum, however, is to be deducted from the Six Thousand ($6,000.00) Dollars retained by the Hirsh Luria Building and Loan Association.

"It is agreed by the Hirsh Luria Building and Loan Association, one of the parties hereto, that the said Association will repay to the Reading National Bank, and to Morris Hassel, all, or a portion, of the amounts retained by the said Association, and for the purposes herein mentioned, after deducting any losses sustained by the Association in the collection of said mortgages, and within the time specified in this Agreement.

"The Reading National Bank does hereby agree to repay the sum of Three Thousand Six Hundred Eighty Dollars and Sixty Cents ($3,680.60) loaned to Israel Liever by the Hirsh Luria Building and Loan Association upon the stock of said Association, this amount representing a repayment of said loan of Three Thousand ($3,000.00) Dollars, plus Six Hundred Eighty Dollars and Sixty Cents ($680.60), dues and fines."

The complaint further avers that in reliance upon the bank's promise as contained in the agreement, the Association, on August 11, 1930, paid it the sum of $20,000, and on September 15, 1930 the bank paid the Association $8,000 as agreed. Thereafter the Association suffered many losses on the assigned mortgages and a schedule of these losses is attached to the complaint. This schedule shows a total loss, exclusive of interest, of $30,811.43, and plaintiff claims that under the terms of the agreement cited above defendant is liable for eight-fourteenths of these losses or $17,606.-56. The schedule further shows that virtually all these losses were sustained before 1935. Plaintiff avers that there is one mortgage among those assigned on which "current interest is paid to December 7, 1942", as to which only a contingent loss has been set up.

In support of his motion for judgment defendant relies, inter alia, on the following grounds: (1) That the agreement shows on its face that the liability of the bank to make good upon the losses on the mortgages held by the Association was limited to the $8,000 which the bank paid to the Association; (2) that in any event the agreement was unenforceable against the bank because it was a contract of suretyship or guaranty and hence ultra vires as to a national bank; and (3) that the suit was not instituted within the period of the statute of limitations.

An examination of the undertaking of the bank in the agreement in suit lends strong support to the first ground urged by the defendant. It undertook to "pay

eight-fourteenths (8/14ths) of said loss, which sum, however, is to be deducted from the Eight Thousand ($8,000.00) Dollars retained by the Hirsh Luria Building and Loan Association * * *." Plaintiff argues that this undertaking should be regarded as reading "which sum, however, is *first* to be deducted" from the Eight Thousand ($8,000.00) Dollars deposited with the Association, because the Association would have no reason to pay over to the bank any part of the $20,000 under an assignment which was expressly subject to an assignment to it unless it received some consideration therefor. It is indeed difficult to see why the Association would surrender its prior lien on this fund without actual consideration. This difficulty is by no means lessened by the portion of the preamble to the agreement quoted above in which the bank and Hassel purport to have agreed among themselves that the proceeds of the shares Liever assigned to them should not be applied to losses sustained by the Association on the assigned mortgages in an amount in excess of $8,000 and $6,000 respectively. The probabilities appear to be that it was not in the contemplation of any of the parties that the Association was likely to suffer anything like the heavy losses on the mortgages which it eventually did, and that the Association felt that the retention of $8,000 from the maturity value of the shares on which the bank held a second lien and $6,000 from that of the shares on which Hassel held a second lien would more than adequately protect it against any anticipated loss.

The only other possibility that suggests itself is that all the parties actually contemplated that as a matter of law the bank and Hassel had some immediate right to claim the maturity value of the shares even though there existed a contingent loss to the Association thereon. The agreement, therefore, may have been a compromise under which the bank and Hassel agreed to forego their rights to claim this fund in its entirety by leaving $14,000 with the Association to be repaid to them in annual installments as it was determined that no losses had been suffered. It may be noted from the agreement that the Association was to pay interest on the funds retained, which lends some support to the possibility that the parties may have thought that as a legal matter the Association was not entitled to retain the funds as against the bank and Hassel if it had not sustained losses at the time of the maturity of the shares. Under

either of these possibilities, however, to construe the promise of the bank as an absolute agreement to pay eight-fourteenths of any loss sustained, subject only to the application of the $8,000 deposited with the Association, would appear to impose by hindsight an obligation not contemplated by foresight. The Association certainly did not get into the agreement language which would impose absolute liability on the bank for eight-fourteenths of the loss, an undertaking which would not have been at all difficult to express in unequivocal terms. Accordingly, since the agreement in suit contains no obligation of the bank to reimburse the Association for any loss sustained by it on the assigned mortgages in excess of the $8,000 which it retained, defendant is entitled to judgment on the pleadings.

■■ Even if the contract were susceptible of the construction urged by the plaintiff, the statute of limitations is a further ground upon which defendant would be entitled to judgment. Defendant argues that any agreement by the bank to be a surety or guarantor for the obligation of others was beyond the scope of the powers granted to it as a national bank. The Supreme Court has recognized, however, that while the ultra vires character of a contract of guaranty by a national bank precludes recovery on the contract itself, it does not bar recovery of any benefits received by the bank as a result of the guaranty agreement. Citizens' Central National Bank v. Appleton, 216 U.S. 196, 30 S.Ct. 364, 54 L.Ed. 443; First National Bank of Aiken v. J. L. Mott Iron Works, 258 U.S. 240, 42 S.Ct. 286, 66 L.Ed. 593. But even if plaintiff's action were to be regarded as a suit to recover the benefits received by the bank, although the complaint is specifically based upon the written agreement, the statute of limitations would be a bar to recovery. From the schedule of the mortgages incorporated in the complaint it is clear that almost the entire amount of the $30,811.43 loss sustained thereon was sustained prior to 1935. Plaintiff urges that his allegation that on one of these mortgages "current interest is paid to December 7, 1942" shows that the final extent of the Association's losses has not been determined and hence the statute of limitations cannot bar the claim. However this may be, the maximum "benefit" which might have been realized by the bank under the agreement was the $12,000 it received from the Association (and this

amount was probably reduced further by the $3,680.60 stock loan of the obligor of the stock). Accordingly, since more than six years prior to the institution of this action the Association had sustained losses on the mortgages of which the share for which the bank is alleged to be liable was in excess of the benefits received by it, the cause of action was complete at that time and the statute of limitations has run against it even if the full extent of the Association's loss is still undetermined.

Since even under the most favorable construction of the pleadings plaintiff cannot prevail, defendant's motion for judgment in its favor on the pleadings is granted.