**PIONEER PARACHUTE CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

No. 194, Docket 20380.

Circuit Court of Appeals, Second Circuit.

June 24, 1947.

250

Edmund S. Kochersperger, of Washington, D. C. (Pomeroy Day and Robinson, Robinson & Cole, all of Hartford, Conn., of counsel), for petitioner.

Sewall Key, Acting Asst. Atty. Gen., and Lee A. Jackson and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The sole question presented by this petition is whether Pioneer Parachute Company, Inc., a Connecticut corporation, and Cheney Brothers, also a Connecticut corporation, were an "affiliated group," as defined in § 730(d) of the Internal Revenue Code, as amended, 26 U.S.C.A. Int.Rev. Code, § 730(d), from March 30 to December 31, 1941, and privileged as such to file a consolidated excess profits tax return for that period. As applied to the facts of this case section 730(d) requires that Cheney Brothers (the parent corporation) own "at least 95 per centum of each class of the stock" of Pioneer, but the term "stock" does not include "non-voting stock which is limited and preferred as to dividends."

During the nine month period involved herein Pioneer's authorized capital stock consisted of 1500 shares of 5% cumulative preferred stock of the par value of $100 each, 398 shares of non-cumulative Class B preferred stock of the par value of $5 each, and 1000 shares of common stock of the par value of $5 each. All the outstanding 5% cumulative preferred and 600 of the 602 outstanding shares of common were owned by Cheney Brothers; one share of common and 199 shares of Class B preferred were owned by Lyman H. Ford, and like shares were owned by J. Floyd Smith. Messrs. Ford and Smith were employees and officers of Pioneer. The remainder of the authorized common stock, 398 shares, was "treasury stock" held for issuance to holders of Class B preferred who were entitled, upon demand, to convert their Class B preferred into common stock, share for share. Because Cheney Brothers owned none of Pioneer's outstanding Class B preferred, which stock, in the opinion of the Tax Court, was neither nonvoting stock nor limited as to dividends, it was held that the statutory requirement for affiliation was not fulfilled. This resulted in a deficiency in Pioneer's excess profits tax for the year 1941 in the amount of $45,162.66.

It is unnecessary to consider whether the Tax Court was correct in treating the Class B preferred as voting stock. Assuming arguendo that it was "non-voting stock," it was not limited as to dividends during the period in question. It is true that the amendment to the articles of incorporation, pursuant to which the Class B preferred was issued, provided for non-cumulative dividends thereon at the rate of only 25 cents per share per annum. But by collateral agreements dated March 24, 1941, Pioneer agreed with Messrs. Ford and Smith, respectively, that so long as the promisee is a holder of Class B preferred stock Pioneer will pay him on each such share "a sum equivalent to two-thirds of the amount of all cash dividends which may be paid on each share of the common stock of this Company," such payment to

be made contemporaneously with payment of the common stock dividends.[1] Consequently, if a 15% dividend (75 cents) were declared on the common, Ford and Smith would receive the same amount as common shareholders (50 cents per share in addition to the preferred dividend of 25 cents); if less than a 15% dividend were declared on the common, they would get more than the common shareholders, and less than the common shareholders, if the dividend were greater than 15%. Thus payments to the holders of Class B preferred stock would vary with the success of the business and the declaration of common dividends. In substance this made Ford and Smith partners with Cheney Brothers in the success of Pioneer's business. This precluded affiliation. The purpose of requiring that the parent corporation shall own at least 95% of each class of stock of the subsidiary, exclusive of "non-voting stock which is limited and preferred as to dividends," is to make sure that the affiliates constitute one industrial economic unit which may fairly be taxed as a single business enterprise. If the subsidiary has outstanding more than 5% of any class of stock on which the dividend varies with the success of its business, that purpose is frustrated, because its business is then conducted in the interest of the "partners" (i.e., the outside shareholders and the parent shareholder), and the affiliates do not constitute a single business enterprise. And this is equally true whether the outside shareholders' right to dividends, limited only by the success of the business, is evidenced by the terms of their stock certificates, as is usual in the case of participating preferred stock, or by the terms of a collateral agreement obligatory upon the corporation, as in the case at bar.

 Before the Tax Court, as its opinion states, the enforcibility of the collateral agreements with Ford and Smith was not questioned. It is now suggested that the collateral agreements did not impose a valid obligation on Pioneer. Assuming that the question is open to us, we think the argument futile. The collateral agreements were part of the consideration offered to induce Messrs. Ford and Smith to exchange their original holdings of common stock for a like number of shares of the Class B preferred stock; and Pioneer could not have repudiated its obligation without returning the shares of common obtained through the exchange. Citizens' Central National Bank v. Appleton, 216 U. S. 196, 205, 30 S.Ct. 364, 54 L.Ed. 443. Such a return would preclude any claim to affiliation, since it would leave Cheney Brothers holding only 60% of the common stock. Nor is it material that the agreements were limited to the time during which Messrs. Ford and Smith, respectively, held their Class B preferred shares, since they continued to hold them during the nine month period here involved.

 The petitioner further contends that since no dividend on common stock was declared during this period, the Class B preferred was in fact limited to the 25 cents per share authorized by the amended articles of incorporation, and the mere possibility that the holders might have received more, had the condition entitling them to it been fulfilled, does not prevent the stock from being "limited and preferred as to dividends" within the meaning of the statutory enactment under consideration. Some support for this view may be found in Erie Lighting Co. v. Commissioner, 1 Cir., 93 F.2d 883, 886, but we are not persuaded by it. The same question was before Judge Patterson in United States v. Liberty Baking Corp., D.C., S.D. N.Y., 25 F.Supp. 203, and he declined to follow the Erie Lighting case. We agree with Judge Patterson's view that the statutory words refer to the rights appurtenant to the stock and the applicability of the statute does not fluctuate from year to year according to whether or not dividends happen to be declared. It would be a strained construction to consider common stock to be "limited" as to dividends because in a given year the directors in their discretion omitted the declaration of one; and equally so with respect to a preferred stock

---

[1] The facts concerning the making of these agreements and the issuance of the class B preferred stock are stated in detail in 6 T. C. 1246 and will not be here repeated.

when its holders are entitled to participate if dividends are declared on common, although in a given period none is paid. It is true that a preferred stock which is accorded voting rights if payment of preferred dividends is in default is not regarded as voting stock before the default occurs. Erie Lighting Co. v. Commissioner, 1 Cir., 93 F.2d 883. With this we agree. The right to vote must be within the control of the shareholder if his stock is to be considered voting stock. See Kansas, O. & G. Ry. Co. v. Helvering, 3 Cir., 124 F.2d 460, 464. But with respect to dividends the shareholder's right is always conditioned on the financial condition of the corporation and the discretion of the directors. Hence the phrase "limited as to dividends" necessarily refers to some other limitation. No other limitation existed with respect to Class B preferred. Hence the Commissioner was right in disallowing affiliation. The order of the Tax Court is affirmed.